WILLIAM J. MINOR *v.* THOMAS ALEXANDER, Dative Testa
mentary Executor of the last will of David Alexander, and
others.

A vendor will not be responsible, where the purchaser has voluntarily surrendered
the possession of the thing sold, without any action having been brought against
him.

The holder of a promissory note, protested for non-payment, is entitled to interest on
the amount from the day of protest. Act 14 February, 1821, sect. 2.

The maker of a note given for the price of a tract of land, is bound, under art. 2531,
of the Civil Code, to pay legal interest on the amount from the time when it be-
came due, till payment.

The provisions of arts. 3314, 3316, of the Civil Code, that neither the contracting
parties, nor their heirs, can take advantage of the non-inscription of a mortgage, are
not irreconcileable with art. 333 of the same Code, which declares, that the effect
of a mortgage will cease, even against the contracting parties, if the inscription has
not been renewed before the expiration of ten years from its date. The intention
of the legislator was, that a mortgage whether inscribed or not, shall cease to have
its legal effect after ten years, to be reckoned, when not inscribed, as to the parties,
from its date, and as to third persons from the time of its inscription, unless renewed
before the expiration of that term ; that, though the mortgage to have effect be-
tween the parties, need not be recorded during the first ten years from its date, yet
to continue in effect afterwards, it must have been inscribed, as directed by art.
3333, before the expiration of that period ; and that this inscription may be con-
sidered as a renewal of the mortgage between the parties, and against third
persons.

APPEAL from the Court of Probates of Concordia, *Mc Whor-
ter*, J.

SIMON, J. The plaintiff is appellant from a judgment which
reduces his claim, which was originally for the sum of $2666 66
with interest, to $1639 39, with legal interest from judicial de-
mand.

The plaintiff's demand is based on two notes of hand, both
dated the 27th of January, 1829, one of which is payable two
years, and the other three years after date. The notes were duly
protested at maturity.

The defence sets up, that the notes sued on were given to se-
cure the payment of the price of two tracts of land, which were
purchased by the drawer, of the plaintiff's ancestor. That *one of*

*the tracts* so purchased was described and limited by certain metes and bounds, which entitled the drawer to all the land embraced within the boundaries set forth in the deed of sale; but that, to a large part of the tract so described, the vendor never had any title, nor was he ever in possession thereof, as one Samuel Davis had, at the time of the sale, and has continued ever since to have and to hold title and possession of a large part of said tract, to wit, between eighty and a hundred acres thereof. The defendants pray, that the plaintiff may be ruled to answer certain interrogatories; and, as no demand of payment was ever made at the place where the notes were made payable, that the suit may be dismissed, &c.

The judgment of the court, *a qua*, refuses to allow to the defendants any diminution of the price for the deficiency pleaded in the answer, in relation to that portion of one of the tracts sold, alleged to be in the possession of Samuel Davis; but allows a deduction of $1027 27, from the original price of the sale, for the loss of a tract of *one hundred superficial acres*, also mentioned in the deed of conveyance to have been purchased by the drawer of the notes, as being another tract *adjoining, in the rear, the tract already described*, being *a back concession, &c.* The judgment recognizes also the mortgage claimed by the plaintiff upon the land sold, as having its effect against Mrs. Montgomery, the widow of the purchaser, who is the owner of one-half of the tract, although ten years having elapsed from the first recording of the mortgage, the same was not re-inscribed until several years afterwards.

Among the errors assigned by the plaintiff and appellant, he contends: 1st. That he is entitled to interest from the protest of the notes, instead of from the commencement of the suit. 2d. That the defendants are entitled to no diminution of price on account of the one hundred acres back concession.

On the other hand, the appellees have prayed, in their answer, that the judgment appealed from may be amended so as to allow them a *pro rata* deduction for the eighty acres of land possessed by Samuel Davis, out of the first described tract, upon the price of the whole tract, as agreed to in the deed of sale; said deduction to be made at the rate of eight dollars per acre.

From the pleadings of the parties, and from the evidence ad-

duced by them on the trial of this cause, we have to consider four questions :

1st. As to the right set up by the defendants to claim a deduction from the price, for the deficiency in quantity alleged to exist in the tract of land first described in the deed of sale, which deficiency is stated in the answer to be between eighty and a hundred acres.

2d. As to the right of the defendants to obtain a deduction from the price for the loss of the one hundred acre tract, as allowed by the judgment appealed from.

3d. As to the right of the plaintiff to recover interest on the amount of the notes sued on, from the date of the protest, and not from the judicial demand.

4th. As to the effect of the mortgage which the plaintiff pretends to have on the property, although the act of mortgage was not re-inscribed before the expiration of ten years, but subsequently.

I. The evidence establishes, that the notes sued on were given in consideration of the price of two tracts of land, sold by the plaintiff's ancestor to David Alexander, on the 1st of June, 1829, for the sum of $4000, stated in the deed of sale to have been paid in hand by the purchaser. The first of these tracts is therein described to be a certain tract of land, on lake Concordia, containing 480 *arpens*, more or less, bounded on the north west by lands granted to William Lintot, on the north by vacant land, on the east by lands of Stephen Minor and Jonathan Dayton, and on the south by lake Concordia. It appears, that a small portion of land lying between Joseph Minor's, Stephen Minor's, and Jonathan Dayton's tracts, and designated on the plat by Nos. 1, 2, and 3, of Sect. No. 31, is pretended to be a part of the land sold, and to be in the possession of one Samuel Davis, who sets up a title to it by virtue of a patent issued from the government of the United States, for the lots No. 1, and 2, on the 23d of June, 1842. It is admitted, however, that Joseph Minor's claim was confirmed by the Commissioners of the United States, on the 6th of May, 1811, to 460 superficial *arpens*, being $389\frac{28}{100}$ acres on the north east margin of lake Concordia, bounded on the west by lands of William Lintot, and that the section on the map marked No. 30,

which is in the possession of the legal representatives of David Alexander, contains $354\frac{99}{100}$ acres. The evidence shows further, that the allegation made in the answer, in relation to the non-possession of the small portion of land in controversy, at the time of the sale, is positively contradicted by the testimony of Thomas Alexander, who states, that Davis has had thirty acres thereof in cultivation, ever since 1838; that after the purchase, he, witness, *took possession, and kept it until* 1839; and that in 1837 or 1838, he agreed to pay Davis rent for the land, if he kept it. He testifies further, that Mrs. Montgomery (David Alexander's widow) was in possession *of the whole of Joseph Minor's tract* from 1831, up to 1837; he thinks that there are about seventy-five or eighty acres of land lying between the Joseph Minor and the Stephen Minor tracts; and he states, that he, witness, *took possession of lots No.* 1, 2, *and* 3, *of Sect.* 31, (the portion said to be claimed by S. Davis,) *under the sale* made by John Minor to David Alexander, and *held possession of it until he gave it up to Davis, in* 1837. He adds, that *some of the timber was deadened during the lifetime* of David Alexander.

From this evidence it is clearly shown, that the whole tract, now said to be deficient in its quantity by about eighty acres, was delivered by John Minor, the vendor, to David Alexander, the vendee, and that it was possessed for a number of years under the sale. If the vendee ever was dispossessed of any part thereof, it was *by his own voluntary act,* for it is positively proved by the testimony of the defendant, Thomas Alexander, sued here as the executor to his brother's estate, that *he himself gave it up to Davis.* If so, he divested himself of the possession of the land in controversy, without any action brought against him for that purpose, and we cannot consider his eviction but as a voluntary one, for which the vendor is not responsible. How could he settle this question of title with Davis without giving any notice to his vendor? The latter was bound in warranty, it is true, but he was so bound according to law. We agree with the Judge, *a quo,* that the evil complained of, was an evil sought, and not shunned; and as Davis' title cannot be inquired into in this suit, and as the defendant has not attempted to show, that the title transferred by the plaintiff's ancestor is inferior in dignity to that

Minor v. Alexander, Executor, and others.

of Davis, we must conclude that the defendant is without remedy.

II. This question is not presented by the pleadings, and a careful examination of the record has convinced us, that it ought not to have been acted upon by the lower court. The answer only sets up a claim to a diminution of the price, in relation to the deficiency in quantity alleged to exist in the tract of land first described in the deed of sale ; and, although the record contains some evidence relative to an adverse claim to, and want of location of the one hundred acre tract, sold as a back concession, we are unable to see how the Judge, *a quo*, could take this question into consideration, beyond the matters in controversy presented by the pleadings.

III. The notes sued on were duly protested at maturity, and ought to bear interest at the rate of five per cent, from the time when they became due, until paid. ' B. & C.'s Digest, p. 42, No. 7. And besides, the consideration of the notes being the price of a tract of land, the buyer is bound by law to pay the legal interest thereon, from the time it became due, until payment. Civil Code, art. 2531.

IV. By consent of counsel, Mrs. Montgomery, who is the widow of David Alexander, was allowed to be heard on this point. It appears, that after the death of David Alexander, the half of the tract in question was sold at a probate sale, and purchased by the widow, who owned also the other half as the widow, in community. Afterwards, the widow and her second husband sold the whole tract to Rowley. In the mean time, a suit was brought by the heir of David Alexander, *to cancel* the probate sale. Pending said suit the land was re-transferred by Rowley to Montgomery and wife, and the property returned back to the succession in community between the deceased and his widow, in consequence of the cancelling of the probate sale. We think the Judge, *a quo*, erred. It is true, that by art. 3316, of the Civil Code, a mortgage need not be inscribed to have effect between the contracting parties, and that by the terms of art. 3314, the inscription is only required with regard to third persons whom it may prejudice ; but art. 3333, provides, that as the registry preserves the evidence of mortgages and privileges, *during ten years, their effect ceases*,

*even against the contracting parties*, if the inscriptions have not been renewed *before the expiration of this time, &c.* This last article appears to be in contradiction with the preceding one, 3316, which gives effect to the mortgage as between the parties, without any registry. It seems to us, however, that they may be easily reconciled. It is evident, that the intention of the lawmaker was, that a mortgage, whether inscribed or not, *should cease to have its legal effect after ten years*, unless *renewed* before the expiration of the time ; and that the want of registry should prejudice the contracting parties as well as third persons, if not made before the expiration of ten years from the date of the mortgage with regard to the parties themselves, or of its first inscription with respect to third persons. From these different provisions of our law, it seems to us that it may be fairly inferred, that although the mortgage need not be originally recorded to have effect between the contracting parties, still, it is required, that in order to continue after ten years to have the effect it had, as to them only, whilst it was not registered, the mortgage should be inscribed as directed in art. 3333 ; and that this second, or new inscription may be considered as a renewal of the mortgage between the parties, and against third persons. This interpretation, in our opinion, gives full effect to the two provisions of the law, apparently contradictory, and is subject to less inconvenience in their application, than if they were construed in their literal sense.

Here, the vendor's mortgage was not re-inscribed until about twelve or thirteen years after the date of the act, and we must conclude, that its effect had ceased, even between the parties, at the time of the second registry.

It is, therefore, ordered, that the judgment of the Court of Probates, except so far as it rejects the defendant's, Alexander's, claim to a diminution of the price for the alleged deficiency in quantity of the tract of land alluded to in the answer, be annulled, and reversed; and in addition to the part of said judgment which is hereby affirmed, it is ordered and decreed, that the plaintiff do recover of the defendant, Alexander, testamentary executor, in the capacity in which he is sued, the sum of two thousand six hundred and sixty-six dollars and sixty-six cents, with five per cent. per annum interest on $1333 33, from the 27th of January,

1831, until paid, and the same interest on $1333 33, from the 27th of January, 1832, also until paid ; and that the costs in both courts be paid by the defendants and appellees.

*T. H. Farrar*, for the appellant.

*Shaw* and *Stacy*, for the defendants.